A. J. BUCHANON, plaintiff in error, *vs.* W. B. HIGGIN-
BOTHAM, defendant in error.

An action was brought by the plaintiff against the defendants, the one as
tenant in possession, the other as the true claimant, to recover the
possession of a lot in the city of Rome, which had been sold by the
sheriff under an execution against the plaintiff, and purchased by S.,
alleging that the sheriff's sale of the lot to S. was fraudulent and void.
On the trial the plaintiff proved, by his own evidence, that S. had sold
the lot to M. for the sum of $1,350 00, and it also appears from the
record that M. had sold the lot to H., one of the defendants, but for
what amount, is not shown, nor are the deeds of conveyance set forth
in the record. The jury found a verdict for the plaintiff. · The de-
fendants made a motion for a new trial on several grounds, one of
which was that the Court erred in refusing to charge the jury, as re-
quested by defendant's counsel, "that if they believed that S. obtained
possession by a fraudulent purchase, yet, if the property was sold by
him to M., and by M. to H., the defendant, then H.'s title will be pro-
tected, and the plaintiff is not entitled to recover, unless the evidence
shows notice of the fraud in him." The Court granted a new trial in
the case, and the plaintiff excepted :

*Held,* That in view of all the facts contained in the record, this Court
will not control the discretion of the Court below in granting the new
trial.

New Trial. Notice. Before Judge KIRBY. Floyd Su-
perior Court. July Term, 1870.

Buchanon brought ejectment against Higginbotham. As
Higginbotham claimed under Buchanon his possession at the
commencement of the suit the 22d June, 1868, and the value
for rent were shown, and plaintiff closed. Defendant then
read in evidence a *fi. fa.* in favor of Terrass Brothers,
against Buchanon and John H. Lumpkin, issued on the 8th
of September, 1862, on a judgment obtained the 30th of July,
1662, for $125 56 principal, $14 21 interest, and $11 80
costs, on which was a levy on said lot, "as the property of
defendant, he being a non-resident." This levy was made
on the 22d of May, 1863, and under it, on the 6th of July,
1863, the sheriff sold the land to C. H. Smith for $1000 00.
There was applied to the payment of various executions

against Buchanon, in the sheriff's hands, all of said money but $135 22.    All this appears *in extenso* on the *fi. fa.*

The defendant next offered in evidence, the deed from the sheriff to Smith in the usual form, except that the *fi. fa.* is therein described as being against Buchanon, without mention of Lumpkin's name.    Because of this variance, plaintiff's counsel objected to said deed as evidence, but the objection was overruled, and the deed was read to the jury.    Defendant's counsel then read in evidence a paper signed by Smith, in which it was stated that all claims by Smith against Buchanon were released, and all by Buchanon against Smith or Smith and Underwood were adjusted, and that the balance due Buchanon on account of the sale of his property, was in Confederate currency, and of little value.    It was dated the 23d of July, 1867.    Smith testified that after the war, he had a settlement with Buchanon, but hearing of his complaining, again settled with him touching all their individual business, and the business of his firm, Underwood & Smith; and this settlement was understood by both to cover the land matter, and he heard no complaint till just before this suit was brought; that at this last settlement he cancelled about $300 00 or $400 00 due from Buchanon to clients of Underwood & Smith, in judgment, and that since, he paid for Buchanan $20 00 and certain freights, which Buchanon still owed him.    He further said the property was hanging at the sheriff's sale at $800 00, when he bid the $1,000 00, and it was knocked off to him; that the debts paid off as aforesaid by the $1,000 00 were *ante bellum* debts, contracted by Buchanon on a specie basis; that in 1863 he sold the land to Marshall, and Marshall sold it to defendant.

The sheriff testified that the said deed was made by him, in pursuance of said sale under said *fi. fa.*, was prepared by Smith, and that he supposed the name of Lumpkin was omitted by oversight; that the property was pointed out by Underwood & Smith, attorneys for plaintiff in *fi. fa.*, the sale was legal and fair, and the entries on said *fi. fa.* were true.

In rebuttal, Buchanon testified, that in May, 1862, he was residing in Rome, Ga., was mustered into the Confederate service, went to South Carolina, and thence to different places, and did not return to Rome till after the war.

But he said he had no intention of remaining away from Rome, and only took his family to Carolina in 1862 because his wife's parents resided there. He and his family came back to Rome in 1867. He said he was in the Confederate States army when the sheriff's sale occurred; that he heard of it, and received a letter from Smith which made him suppose it was all right, and that his settlement with Smith covered nothing touching the land matter, except the balance of the $1,000 00, which was left after the appropriation to other *fi. fas.* by the sheriff, as aforesaid. Plaintiff also read in evidence a letter from Smith to Buchanon, dated August 21st, 1863. In it, Smith wrote recounting that he had tried to buy said land from Buchanon at $1,000 00, which he had written he would take for it, but upon the offer by Smith to pay the $1,000 00 in Confederate currency, Buchanon had demanded bank notes, and prevented the trade; that Smith supposed he was residing in South Carolina, and was not in the army, and as the stay-law was confined to citizens of this State, and Underwood and Smith held about $500 00 of judgments against him, he had had the land levied on and sold. In it, he recounted the circumstances of the sale and distribution of the proceeds as aforesaid, and stated that the sale was legal in every respect, and asked what to do with the balance of the money. Plaintiff also read in evidence Barber & Son's table of the comparative value of specie and Confederate currency during the war. The jury found for the plaintiff. Defendant moved for a new trial upon the following grounds:

1st. Because the Court erred in charging the jury as follows: "If you believe that C. H. Smith had the land levied upon with the *fi. fas.* which he had in his control, as attorney for his clients, with a view to defraud the plaintiff in

Buchanon *vs.* Higginbotham.

this action, and for the purpose of speculation, then the plaintiff is entitled to recover."

2d. "Because the Court refused to charge the jury as requested by counsel for defendant, in writing : "That if the jury should believe that C. H. Smith obtained possession by a fraudulent purchase, yet, if the property had been sold by him to Marshall, and by Marshall to Higginbotham, the defendant, then Higginbotham's title will be protected, and the plaintiff is not entitled to recover, unless the evidence shows notice of the fraud in defendant."

3d. Because the Court omitted to give the following charges to the jury when requested so to do, in writing, by counsel for defendant, to-wit : Numbers one to five, inclusive. 1st. "If the jury believe that Buchanon was a non-resident, or not an inhabitant of this State at the time the levy and sale were made, then the sale was valid and binding, even if the Stay-laws are constitutional. If the sheriff sold the land and set forth in the levy that Buchanon was a non-resident, and the other proceedings, in reference to the levy and sale, were regular and legal, then the purchaser got a good title, and the remedy of Buchanon, if any, is against the sheriff for trespass. 2d. If the jury believe that the money arising from the sale was, in part, applied to Buchanon's debts, and that he made a settlement with C. H. Smith for the balance coming to him, and held up in the sheriff's hands, and received money or claims against him in satisfaction of said balance, then such settlement is an approval of the application of the funds, and ratified such application. And if said settlement was intended by the parties to apply to the claim of Buchanon for the property itself, he is bound by it and cannot recover. 3d. The Act of December, 1861, which forbids the levy and sale of the property of soldiers in the Confederate service during their absence, is null and void, the same being against public policy, and being also void under the Constitution of this State, which declares that all Acts passed by the Legislature of this State in aid of the re-

bellion are null and void; and Buchanon cannot recover under this Act.    4th. The Stay-laws of this State, passed in 1866, and prior thereto are unconstitutional and void, and for this reason the sheriff had a right to levy on and sell the property of defendant at any time prior to 1866, and if the levy and sale are otherwise regular, the purchaser at the sale got a good title and will be protected.    "The Supreme Court of this State having ruled that the Stay-law was unconstitutional and void, under that ruling the plaintiffs in *fi. fa.*, Terrass Brothers, were never under any legal disability to enforce the collection of the money due on their *fi. fa.*" The Supreme Court has held the Stay-laws passed in 1866, and prior thereto, unconstitutional and void, and that it was the right of plaintiffs in *fi. fa.* to proceed and make their money by levy and sale during the period when it was expressly forbidden by the Stay-laws, "and therefore, if the levy and sale were made during this period, it was lawful and the purchaser will be protected." 5th. If Buchanon absented himself from this State for an illegal purpose, such as to aid in the rebellion, and the levy and sale was otherwise regular and legal, he cannot recover, because his absence was voluntary, contrary to public policy, and illegal." And in lieu thereof, the Court gave, as he stated, the substance of these charges—when he stated to the jury that all the laws passed by the Legislature from 1860 and since, embracing what are known as stays, suspension and relief, had been decided by the Supreme Court to be unconstitutional, and that, if these decisions were reversed, the Supreme Court must do it, he would not overrule them, but be governed by them until reversed.

4th. Because the jury found contrary to the charge of the Court, when the Court instructed them, that if C. H. Smith and Buchanon, the plaintiff, got together in 1867, and settled the matter in dispute, Smith paying Buchanon a consideration therefor, that was an end of the matter, and plaintiff could not recover.

5th. Because the jury found contrary to the law and the evidence.

The Court granted a new trial. It is said that this was error, because the Court erred in charging the jury that the Act of the 14th of December, 1861, and all the Stay Laws, including that of November 29th, 1862, were unconstitutional, and in charging that the decision of the Supreme Court covered the Acts of December 14th, 1861, and November 29th, 1862; because he should have ruled out said *fi. fa.*, and because he granted said new trial.

WRIGHT & FEATHERSTON, for plaintiff in error.

ALEXANDER & WRIGHT, for defendant in error.

WARNER, J.

On the statement of facts disclosed by the record in this case, this Court will not control the discretion of the Court below in granting the new trial.

Let the judgment of the Court below be affirmed.

---

LEMUEL GARNER, plaintiff in error *vs.* THE STATE OF GEORGIA, defendant in error.

A defendant was indicted for the offense of riot, and on being arraigned, plead "not guilty," and was put upon his trial before the jury, and after the evidence was closed on both sides, the defendant withdrew his plea of "not guilty" and plead "guilty," which latter plea was entered on the minutes of the Court. After the jury were discharged from further consideration of the case, the defendant withdrew his plea of "guilty" and so notified the presiding Judge, in October, 1867. But the records of the Court do not show anything as to such withdrawal of the plea of guilty. No judgment was passed on the defendant at that time. In October, 1870, the defendant was called on to show cause why judgment should not be passed upon him for the offense, on his plea of guilty as it appeared on the records of the